which no exceptions were taken; and the motion for a new trial, made upon the ground that the verdict was against the weight of evidence, was denied by the court, who saw the witnesses, heard their testimony, and observed their demeanor. Under those circumstances, we would not be justified in reversing his order and the judgment, unless it was very clear that the verdict of the jury must have been the result of passion, prejudice, corruption, or mistake. Upon a careful examination of the case, we do not feel ourselves able to reach this conclusion. The evidence of the plaintiff was corroborated by his two companions, and although there was much in the testimony upon that side of the case which might call for explanation, and afforded a legitimate ground for criticism, yet we cannot say how much of that was due to the contradictions of the witnesses themselves, or how much to the fact that the testimony given by them passed through the lips of an interpreter before reaching the jury. Those matters were the legitimate subject of comment before the jury, and were to be considered by them. It is quite clear that the testimony offered by the defendant, if it was believed in its entirety, practically destroyed the case which the plaintiff had made. But the evidence was important for that purpose only if the jury found from it that the occurrence on the bridge took place on the night when the plaintiff was said to have been injured, and if the man there hurt was the plaintiff. Upon both of these points there was some hesitation on the part of the witnesses, and the identification of the plaintiff as the man hurt upon the bridge was weak, not alone because of what the witnesses testified to, but quite as much because of the failure of those witnesses who might have identified him to do so. After all that testimony had been given, the case was still peculiarly one for the determination of a jury; and we cannot say that the conclusion of the jury, that the plaintiff's case was established by a fair preponderance of the credible evidence, was so against the weight of testimony that we would be justified in reversing it.

The judgment and order must therefore be affirmed, with costs. All concur, except PATTERSON, J., dissenting.

---

(39 App. Div. 576.)

In re SIMONDS MFG. CO.

(Supreme Court, Appellate Division, First Department. April 21, 1899.)

CORPORATIONS—RECEIVERS—ACCOUNTING—NOTICE.
The service on creditors of the order to show cause whether or not a corporation should be dissolved, as required by Code Civ. Proc. § 2425, does not require them to take notice of all the further proceedings; and hence an accounting by a temporary receiver, authorized by sections 1788, 2423, with himself as permanent receiver, is not binding on the creditors, unless they receive notice thereof.

Appeal from special term, New York county.

On the voluntary dissolution of the Simonds Manufacturing Company. From an order sustaining exceptions to the report of a referee to take and state the account, and sending the account back to the receiver for a further hearing, the receiver appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Frank D. Arthur, for appellant.

Richard T. Greene and G. Putnam Smith, for various creditors, respondents.

RUMSEY, J. In the month of May, 1894, the directors of the Simonds Manufacturing Company filed in this court a petition for the voluntary dissolution of the company, under the authority of section 2419 of the Code of Civil Procedure. The usual order to show cause was made on the 15th of May, 1894, returnable on the 20th of August in the same year. When the order to show cause was made, Richards was appointed a temporary receiver, under the authority given to the court by section 2423. By virtue of that appointment, he took possession of the assets of the corporation, which, in the original schedules filed with the petition, appeared to be of the value of about $335,000. About a year after his appointment, the temporary receiver presented to the court certain amended schedules, showing the value of the assets to be $203,000, and petitioned that the amended schedules be substituted for the original ones, and procured an order to that effect. At that time no creditor had filed any notice of appearance, or appeared in the proceedings, and the order was obtained upon notice only to the attorney general and the corporation. Down to this time no hearing had been had upon the order to show cause, nor does it appear that any steps had been taken in that regard, except to adjourn from time to time the hearing upon the order to show cause. On the 27th of May, 1895, a referee was appointed to pass upon the facts set forth in the original petition of the directors for voluntary dissolution, pursuant to which the referee took testimony, and made a report to the effect that the corporation was insolvent, and should be dissolved; and on the 30th day of August, 1895, upon notice to the attorney general only, no one else having appeared in the proceeding, an order was granted dissolving the corporation, and appointing Charles W. Richards permanent receiver. On the 23d of June, 1896, 10 months after the appointment of the permanent receiver, Charles W. Richards, having filed his accounts as temporary receiver, applied to the court for an order of reference to take and state that account. This application was made upon notice to the attorney general only, no creditor having yet filed a notice of appearance in the proceeding. Upon the execution of the order of reference, the attorney general appeared, and on the 14th of September, 1896, the referee filed his report, to which exceptions were filed by both the receiver and the attorney general. A motion to confirm the referee's report was afterwards made upon notice to the attorney general, who appeared, and an order was made settling the account of the receiver, practically in accordance with the report of the referee, allowing the temporary receiver a certain sum as his commission, directing certain payments to be made by him, and fixing the balance in his hands.

Subsequently, upon the petition of a creditor, an order was made

appointing a referee to report to the court upon the condition and affairs of the estate and corporation in the hands of the permanent receiver, who was required to appear before the referee, and produce his accounts, books, and vouchers. After this proceeding had progressed somewhat, it was turned into a proceeding for an accounting of the permanent receiver, and a referee was appointed to take and state his accounts, with directions to pass upon such disputed claims of creditors as should be presented. The receiver thereupon filed his account, to which exceptions were filed by certain creditors, and upon the hearing of those exceptions before the referee it was claimed on the part of the receiver that he was to be charged as permanent receiver only with the balance found to be in his hands at the conclusion of his accounting as temporary receiver, and that that accounting was binding upon all parties to the proceeding. It was claimed, upon the other hand, by the creditors, that they were not bound by that accounting, but that, as to them, the whole matter was still open, and the receiver was bound to account for everything which he had received in his capacity as temporary receiver, and that, so far as they were concerned, the directions of the court upon his accounting as temporary receiver were not to be taken into consideration. The referee held that, the accounts of the temporary receiver having been settled and passed upon an order of this court, he had no jurisdiction to inquire into them, and that the sole remedy of the creditors was either by an appeal from the order settling those accounts, or by an application to the court to modify or set them aside. The reason for this holding was that it did not appear that the contestants had ever filed a notice of appearance under section 2428 of the Code, to entitle them to notice of the temporary receiver's proceedings, and for that reason they were not in a situation to question the validity of those proceedings. Upon a motion to confirm this report of the referee, the order appealed from was made; the court holding that the creditors, never having had notice of the accounting of the temporary receiver, were in no way bound by that accounting, or by the order made thereon. The sole question, therefore, presented upon this appeal, is whether the court had such jurisdiction of the matter at the time of the accounting of the temporary receiver that its order then made, without notice to any one except the attorney general, was conclusive upon all persons who might subsequently serve a notice of appearance in the special proceedings.

This proceeding is a purely statutory one, and, while the court acquired jurisdiction over it by the filing of the petition, it has no power or authority to take any other step in the matter than such as is conferred by the statute. In re E. M. Boynton Saw & File Co., 34 Hun, 369, 371. The Code requires that the order to show cause should be served upon each person named in the schedules as a creditor (section 2425), and it appears from the statement in the record that that order was served upon each of the respondents in this proceeding. But the persons served with that order are called into court simply upon the order to show cause whether

or not the corporation should be dissolved. Section 2423. That is the only matter to be presented to the court until a final determination has been arrived at upon the petition for a dissolution. They had no reason to suppose, therefore, upon receiving this notice, that anything further would be done, pursuant to it, until the hearing of the order to show cause, and they were not called upon to watch the proceedings, or to appear, for the purpose of receiving notice of the steps to be taken in the matter, until the hearing upon that order had been had. Indeed, practically no step could be taken until that time.

As the Code stood when originally passed, the court had practically no power to do anything until the final order was made, after cause had been shown. But by an amendment, in 1889, power was given to it to appoint a temporary receiver. The power of that receiver, however, was strictly limited by the provisions of the Code (Code Civ. Proc. §§ 1788, 2423); and it is very clear that the object of the appointment of the temporary receiver, under that section, was only to take possession of the property of the corporation, if it should be insolvent, and to hold it, without making a final disposition of it, until such time as a permanent receiver should be appointed, unless the court, for good reason, upon motion, with notice to the attorney general, should see fit to confer upon him some further authority, the extent of which is strictly limited. Of course, when a permanent receiver should have been appointed, it would be necessary for the temporary receiver to account for the property he had received. But, where the temporary and the permanent receiver are the same person, the possession of the property is not changed, and all that results from the final order of dissolution and the appointment of the permanent receiver is to vest in him, as such, the assets which he had held in his capacity as temporary receiver, and to give him the additional authority which the position of permanent receiver confers upon him. While it may be convenient for him at that time to account for his doings as temporary receiver, so that the amount of the assets which he takes as permanent receiver may be settled, yet, practically, such accounting is a mere matter of bookkeeping, and there is no reason why it should be held conclusive as to the creditors of the corporation. In that case, where the temporary receiver accounts to himself as permanent receiver, the latter has no interest adverse to the former, and there is no reason why he should be permitted to represent the creditors of the corporation, as might possibly be the case were the permanent and the temporary receiver two different persons, and were the accounting had for the purpose of fixing the amount for which the temporary receiver was liable, and which was to be received by the permanent receiver. Where the two are the same person, and the accounting and transfer are practically formal, such accounting is not binding upon any one who has not had actual, personal notice of it, and an opportunity to appear in it.

It is significant that the Code has provided for the service by publication of a notice of an accounting of the permanent receiver.

By chapter 245, Laws 1880, certain sections of the Revised Statutes (part 3, c. 8, tit. 4, §§ 66–89, pp. 1912, 1914, 2 Rev. St. [9th Ed.]) are made applicable to a receiver appointed under section 2429 of the Code; but those sections do not apply to a temporary receiver. In re Smith Co., 31 App. Div. 39, 52 N. Y. Supp. 877. The fact that the legislature has made no provision for notice to be given to any one upon the accounting of a temporary receiver shows clearly that it was not intended that such an accounting should be a matter of course in the proceedings at the time of the order of final dissolution and the appointment of the permanent receiver.

In this case, when Richards' appointment as temporary receiver was superseded by his appointment as permanent receiver, there was no actual transfer of assets from one person to another, and there was no reason why he should make the accounting for the purpose of fixing the amount in his hands. The accounting was, therefore, entirely unnecessary, and ought not to have been held binding upon anybody, and we can discover no principle, nor can we find any authority, to warrant a holding that it is binding.

For that reason, we are of the opinion that the determination of the court below was correct, and the order appealed from should be affirmed, with $10 costs and disbursements. All concur.